**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  05-cv-00642-REB-MJW

TOM LaBRECQUE, and
BRIAN SYDNES,

    Plaintiffs,

v.

L3 COMMUNICATION TITAN CORPORATION, a Delaware corporation,
f/k/a TITAN CORPORATION, a Delaware corporation; and
THE UNITED STATES OF AMERICA,

    Defendant.

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following motions: 1) **Defendant L-3 Communication Titan Corporation's Motion for Summary Judgment** [#[93], filed March 16, 2007; and 2) **United States' Motion for Summary Judgment** [#95], filed March 6, 2007. For the reasons discussed below, Titan's motion for summary judgment is granted in part and denied in part, and the United States' motion for summary judgment is granted.

### I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity) and putative jurisdiction under 28 U.S.C. § 1346(b)(1) (claims against United States).

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  **White v. York Int'l Corp.**, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.  56(c); see **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986); **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. **Matsushita Electric Industrial Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986).

## III.  FACTS

This summary of facts is based on the evidence currently in the record, viewed in the light most favorable to the plaintiffs.  The plaintiffs, Tom LaBrecque and Brian Sydnes, were employees of defendant L-3 Communication Titan Corporation (Titan). Sydnes was hired by Titan in July of 2002.  LaBrecque was hired by Titan in December of 2002.  Titan had a contract to provide man-power support to the United Stated Northern Command (Northcom).  LaBrecque and Sydnes were hired by Titan to provide video teleconferencing (VTC) support to Northcom.  This was among the services that Titan had contracted to provide to Northcom.

Lt. Col. Randy McCanne was the commander of the Joint Communications Suport Center (JCSC) at Northcom.  McCanne was responsible for the computer

systems, telecommunications, and video teleconferencing at JCSC. Sydnes and LaBrecque provided VTC support to McCanne's staff. LeBrecque and Sydnes received their day to day direction and assignments from Captain Kristina Roth. Roth reported directly to McCanne. LeBrecque and Sydnes worked in a building occupied and operated by Northcom.

On March 14, 2003, Sydnes observed SMSgt Debra Helle provide an operational cryptograph key to Jon Moody, a civilian employee of a defense contractor. With the key, a user can access classified communication security (COMSEC) information. Sydnes believed that Moody's possession of the key to be a violation of federal security regulations because Moody had not received the required authorization to access COMSEC information. On March 28, 2003, Sydnes again observed Moody in possession of an operational COMSEC key. Sydnes asked Moody if he had been trained concerning the used of COMSEC materials and included in the access list. Moody told Sydnes he had not received any COMSEC training, was not aware of any authorization lists, and that SMSgt. Helle had provided the key to Moody. With Moody's consent, Sydnes returned the COMSEC key to the appropriate officials.

Sydnes then discussed this incident with LaBrecque, and with another co-employee, Steve Hettler. After this discussion, Sydnes reported the incidents to several people. On March 31, 2003, he reported his observations verbally to Staff Sergeant Roy James. On April 1, 2003, he reported the incidents verbally and via e-mail to his immediate supervisor at Titan, Gary Martinez. On April 1, 2003, Sydnes also reported his observations via e-mail to the two COMSEC responsible military officers.

Less than two hours after Sydnes' communications on April 1, 2003, Sydnes and LaBrecque were confronted by Martinez, the Titan supervisor, and Lt. Col. McCanne. McCanne angrily told the plaintiffs that he was "trying to build a team," but the plaintiffs were "tearing it apart." McCanne complained about the manner in which the incident was reported. LaBrecque defended Sydnes' efforts to report the COMSEC key incidents, saying that he and Sydnes had consulted the regulations and had followed them correctly.

McCanne insisted that Sydnes move his belongings from his normal work area to the basement, where Sydnes did not have a desk, a chair, or a computer. Martinez did not object to the move. For the remainder of the week, Syndes was required to share LaBrecque's computer, and to work without a desk. Two days later, on April 3, 2003, Titan management told Sydnes and LaBrecque to move to a temporary office in a different building, a location from which it was impossible for them to perform their work. On April 7, 2003, the plaintiffs both were fired. The plaintiffs claim their termination was in retaliation for their reporting of the breach of regulations controlling the use of a COMSEC key.

The defendants claim that the plaintiffs' employment was terminated because the Northcom found it necessary to redefine its VTC engineering requirements, and to cut or re-classify two of its engineering positions, positions occupied by the plaintiffs, to meet customer needs and requirements. The defendants argue that this was the legitimate and non-retaliatory reason for the plaintiffs' termination.

The plaintiffs assert two claims against Titan. First, they assert a claim for wrongful discharge in violation of public policy. Second, they assert a claim for extreme

4

and outrageous conduct. The plaintiffs assert three claims against the United States. They assert claims for civil conspiracy, extreme and outrageous conduct, and wrongful discharge in violation of public policy. All of the plaintiffs' claims are based on Colorado state law, and their claims against the United States are brought under the Federal Tort Claims Act.

## IV. SOVEREIGN IMMUNITY

The United States argues that this court does not have jurisdiction over the plaintiffs' Federal Tort Claims Act claims because sovereign immunity shields it from the those claims. The Federal Tort Claims Act (FTCA) provides a limited waiver of sovereign immunity for damages arising from torts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). However, the FTCA contains exceptions to this waiver of sovereign immunity. These exceptions include torts arising from interference with contract rights, and for acts or omissions based on the performance of discretionary functions by federal employees. 28 U.S.C. § 2680(a) and (h). The United States argues that these exceptions to the FTCA's general waiver of sovereign immunity are applicable to this case.

The terms of the government's consent to be sued under the FTCA define the court's jurisdiction under the FTCA. ***Ewell v. U.S.***, 776 F.2d 246, 248 (10th Cir. 1985). If a claim falls within one of the exceptions defined in § 2680, then the court does not have subject matter jurisdiction over the claim.

The United States argues also that the plaintiffs' claims fall within the discretionary function exception defined in § 2680(a). The FTCA excludes from its broad waiver of sovereign immunity claims based on "the exercise or performance or

5

the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In **Berkovitz v. United States**, 486 U.S. 531 (1988), the United States Supreme Court established a two part test for the application of the discretionary function exception. First, the court must consider whether the conduct in question is a matter of choice for the acting employee. "(C)onduct cannot be discretionary unless it involves an element of judgment or choice." **Id**. at 536. Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." **Id**. The Court noted that the discretionary function exception is based on Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy. **Id**. at 537.

The Supreme Court again examined the discretionary function exception in **United States v. Gaubert**, 499 U.S. 315 (1991). Addressing the second part of the **Berkovitz** test, the **Gaubert** court said:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

**Id**. at 324 - 25.

The decision in question here is the decision by employees of the United States effectively to terminate the plaintiffs' employment. The plaintiffs allege that the United

6

States made the decision to terminate the plaintiffs based on a motive to retaliate against the plaintiffs, and not on any legitimate assessment of need for the plaintiffs' services, budgetary issues, or other concerns. The plaintiffs allege that the subjective intent of the relevant employees of the United States was improper and motivated the termination of the plaintiffs' employment.

There is no dispute that the United States has discretion to determine which employees or contractors it uses to accomplish the work done at the JCSC. Given that discretion, I then must determine if the decision in question was an administrative decision grounded in social, economic, and political policy. **Berkovitz**, 486 U.S. at 537. The United States Court of Appeals for the Tenth Circuit has held that

> (d)ecisions regarding employment and termination are inherently discretionary, especially where, as here, the relevant statutes provide no guidance or restrictions. Such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing.

**Richman v. Straley**, 48 F.3d 1139, 1146 - 1147 (10th Cir. 1995) (citation omitted). "(U)niformly, the federal circuit courts under the FTCA have found that employer decisions such as hiring, discipline, and termination of employees are within the discretionary function exception." **Crete v. City of Lowell**, 418 F.3d 54, 64 - 65 (1st Cir. 2005) (citing cases).

Generally, employment decisions such as hiring, firing, and discipline fall within the discretionary function exception because such decisions typically involve a weighing of social, economic, and/or political policy. Here, the plaintiffs allege that the decision to terminate them was motivated solely by retaliation, and did not involve a weighing of social, economic, and/or political policy. Assuming the United States'

7

decision about the plaintiffs' employment was motivated solely by retaliation, the United States' decision to terminate the plaintiffs' employment still falls within the discretionary function exception.  Again, the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." ***United States v. Gaubert***, 499 U.S. at 324 - 325.  The exception applies "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

The undisputed facts in the record demonstrate that the decision of the United States' that is challenged by the plaintiffs was an employment decision that falls within the discretionary function exception of 28 U.S.C. § 2680(a).  Therefore, these claims must be dismissed for lack of subject matter jurisdiction.  The United States is entitled to summary judgment on the plaintiffs' claims.  In light of this conclusion, I will not address the United States' argument that the plaintiffs' claims also fall within the FTCA's exception for claims concerning interference with contract rights.  28 U.S.C. § 2680(h).

## V.  EXTREME AND OUTRAGEOUS CONDUCT

Under Colorado law, the tort of extreme and outrageous conduct, or intentional infliction of emotional distress, has three elements: 1) the defendant engaged in extreme and outrageous conduct; 2) recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) which caused the plaintiff to suffer severe emotional distress.  ***See, e.g., Culpepper v. Pearl Street Bldg., Inc.,***  877 P.2d 877, 882 (Colo.,1994).  The level of outrageousness necessary to meet the first element is "extremely high."  ***Archer v. Farmer Bros. Co.***, 70 P.3d 495, 499 (Colo. App. 2002).

8

> Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Id*. The trial court must address the threshold issue of whether the conduct in question is sufficiently outrageous as a matter of law to support a claim of extreme and outrageous conduct. *Id*.

Here, the plaintiffs allege that the defendants terminated the plaintiffs' employment in retaliation for the plaintiffs' reporting of a violation of a regulation that contained restrictions on who may possess and use a COMSEC key. The plaintiffs were berated by Lt. Col. McCanne for tearing apart his team, were forced to move from their normal workspace, and later were required to move to a different building, which was distant from their work site. When their employment was terminated, the plaintiffs were supervised as they gathered their personal belongings, and then were escorted out of Titan's building.

As a matter of law, these facts are not sufficient to support a claim of extreme and outrageous conduct. Getting fired from a job, even for discriminatory reasons, is not outrageous conduct. **Grandchamp v. United Air Lines, Inc.**, 854 F.2d 381, 384-385 (10th Cir. 1998). Termination combined with defamatory comments, or demotion in violation of the employer's policy do not constitute outrageous conduct. **Steinberg v. Thomas**, 659 F. Supp. 789, 795 (D. Colo. 1987); **Salimi v. Farmers Ins. Group**, 684 p.2d 264, 265 (Colo. App. 1984). Rather, a termination must be combined with other wrongful behavior, such as a physical assault, or extreme harassment, ridicule, and humiliation to constitute and arguable claim of outrageous conduct. **Kirk v. Smith**, 674

9

F. Supp. 803 (D. Colo. 1987); ***Wing v. JMB Property Management Corp.***, 714 P.2d 916, 918 (Colo. App. 1985).

The relocations of the plaintiffs' work areas and the manner in which their eventual termination was conducted may have been attended by insults, indignities, annoyances, and petty oppressions.  However, viewing the evidence in the record in the light most favorable to the plaintiffs,  these actions by the defendants are not sufficiently outrageous as a matter of law to support a claim of extreme and outrageous conduct.  Thus, the defendants are entitled to summary judgment on the plaintiffs' outrageous conduct claims.

## V.  DISCHARGE IN VIOLATION OF PUBLIC POLICY

I have reviewed carefully the defendants' motions for summary judgment, the plaintiffs' responses, and the defendants' replies.  Based on that review, I discern one or more genuine issues of material fact relevant to the plaintiffs' claim alleging that they were discharged by Titan in violation of public policy.  The existence of one or more genuine issues of material fact precludes the entry of summary judgment in favor of Titan on this claims.  FED. R. CIV. P.  56(c).

## VI.  CONCLUSION AND ORDER

The undisputed facts in the record show that employment decision challenged by the plaintiffs falls within the discretionary function exception of 28 U.S.C. § 2680(a).  Therefore, the United States is entitled to summary judgment on the plaintiffs' claims, and the plaintiffs' claims against the United States must be dismissed for lack of subject matter jurisdiction.

Viewing the facts in the record in the light most favorable to the plaintiffs, the

defendants' alleged actions are not sufficiently outrageous as a matter of law to support a claim of extreme and outrageous conduct. Thus, the defendants' are entitled to summary judgment on the plaintiffs' outrageous conduct claims.

Viewing the facts in the record in the light most favorable to the plaintiffs, I discern one or more genuine issues of material fact relevant to the plaintiffs' claim alleging that they were discharged by Titan in violation of public policy. Titan's motion for summary judgment on this claim is denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant L-3 Communication Titan Corporation's Motion for Summary Judgment** [#[93], filed March 16, 2007, is **GRANTED** as to the plaintiffs' claim of extreme and outrageous conduct;

2. That **Defendant L-3 Communication Titan Corporation's Motion for Summary Judgment** [#[93], filed March 16, 2007, is **DENIED** otherwise;

3. That the **United States' Motion for Summary Judgment** [#95], filed March 6, 2007, is **GRANTED**; and

4. That the plaintiffs' claims against the United States are **DISMISSED** for lack of subject matter jurisdiction under 28 U.S.C. § 2680(a).

Dated May 16, 2007, at Denver, Colorado.

          **BY THE COURT:**

          **s/ Robert E. Blackburn**
          **Robert E. Blackburn**
          **United States District Judge**